**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3691
_____

UNITED STATES OF AMERICA

v.

ANTRON TALLEY,
                    Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
D.C. No. 2-14-cr-00265-001
District Judge:  Honorable Cathy Bissoon
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 8, 2020
_____

Before:  CHAGARES, HARDIMAN, and MATEY, Circuit Judges.

(Filed: September 10, 2020)

_____

OPINION*
_____

_____

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Circuit Judge.

Antron Talley was convicted of illegally possessing a firearm in violation of 18 U.S.C. § 922, which prohibits those individuals previously convicted of felonies from possessing firearms in or affecting interstate commerce. After his conviction in a bench trial and post-trial litigation challenging the conviction, Talley appeals the District Court's judgment of conviction. We will affirm.

I.

We write for the parties and so recount only the facts necessary to our decision.

In November 2014, a federal grand jury charged Talley with possession of firearms and ammunition in violation of 18 U.S.C. §§ 922(g)(1), 924(e), and (a)(2). Section 922(g)(1) prohibits "any person . . . who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year" from "possess[ing] in or affecting commerce, any firearm or ammunition." Talley stipulated that he previously had been convicted of a crime punishable by imprisonment for a term exceeding one year, and that whoever possessed the firearms and ammunition in question did so in or affecting interstate commerce. So at trial, the only issue was whether on the day in question, Talley possessed one of the two firearms recovered at the crime scene, a Sig Sauer pistol or an FNH pistol.[1]

Talley waived his right to a jury trial and chose to proceed pro se, with standby defense counsel, who presented closing argument on Talley's behalf. The District Court

_____

[1] At trial, Donald King acknowledged possessing the FNH on the night in question.

concluded that the Government proved beyond a reasonable doubt that Talley knowingly possessed a firearm or ammunition as described in the indictment and accordingly found Talley guilty of the charged offense. In reaching that legal conclusion, the District Court made the following factual findings and relied on the following testimony, in relevant part.

At 3:41 a.m., on August 28, 2013, Zachary Hnesh was on Carson Street in Pittsburgh, waiting for a taxi to take him to his hotel, when he saw two individuals pounding on a nearby door. Because he suspected that they were trying to break in, he called 911.

Donald King, who admitted to being one of the two individuals, testified that he previously had pled guilty to state charges arising from this same incident, and acknowledged that he hoped to receive a benefit at sentencing as a result of his testimony at Talley's federal criminal trial. According to King, he and Talley were friends, and they forcibly entered the apartment together, with each carrying a gun. When King saw the police coming, he ran into a different room than the one he had been in and hid his gun in a closet. The arresting officers found a folding knife and roll of duct tape in King's pocket but found no weapons on Talley's person.

When the police entered the building, and climbed the stairs to the third floor, they observed King and Talley both running out of one of the bedrooms. As far as the officers could tell, the entire apartment was unoccupied. Officer Robert Pedley entered the room from which he had seen both men run, and found a small closet with two handguns in it, with one gun placed under a piece of carpet and another placed on top of the carpet.

3

King testified that he put his gun in the closet and that he did not know what Talley had done with his. Two former tenants also testified, and both denied ever having any guns or ammunition in the apartment.

With all of this testimony in mind, the District Court observed that the only witness who testified that Talley had a gun was King. The District Court noted that it needed to "be cautious in deciding whether or not to accept as true the testimony of King for obvious reasons" and that "[t]he entire charge [wa]s based on circumstantial evidence except the testimony of King." Supplemental Appendix ("SA") 253. The court reasoned that if it credited King's testimony, then the Government would have proven Talley's guilt beyond a reasonable doubt, but if it rejected that testimony, it would have to consider the circumstantial evidence. Considering these alternatives, the court credited King's testimony but also concluded that even if it were not crediting King, the circumstantial evidence led it to the same conclusion: that Talley possessed one of the guns on the night in question. As the District Court concluded, "[t]he officers observed King and Talley running from one room to another after the police announced their arrival; the guns were found in the room from which King and Talley had run" and so there was "plenty of evidence that . . . Talley possessed a gun on August 28, 2013" and "none that he did not, except that none was found on his person." Id.

Talley moved for a judgment of acquittal at the close of the Government's evidence and again after he rested, with the court reserving decision. After he was convicted, Talley also moved for a new trial under Federal Rule of Criminal Procedure 33 and for a judgment of acquittal under Rule 29, both of which the court denied. The

court sentenced Talley to 71 months of imprisonment, to be followed by three years of supervised release, and this timely appeal followed.

II.[2]

Proceeding <u>pro se</u>, Talley notes that this appeal is limited to three issues:  a claim of actual innocence, a claim that the District Court violated Federal Rule of Evidence 901, and a claim that the Government suppressed evidence in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  He makes clear that other arguments he advances are offered only in support of these three claims, and not as standalone claims for relief.  We discuss each in turn.

A.

Talley first contends that his conviction should be overturned based on his "actual innocence."  Talley Br. 3.  Specifically, Talley argues that the District Court erred in concluding that the Government proved beyond a reasonable doubt that he knowingly possessed one of the firearms described in the indictment.  The Government responds that despite Talley's use of this phrase, which is a term of art in habeas litigation, Talley's claim in fact challenges the sufficiency of the evidence.  Because Talley brings this claim as part of his direct appeal and not on collateral review, and given the arguments he advances, we agree and will analyze it as such.

We review the District Court's factual findings at a bench trial for clear error and exercise plenary review over its legal determinations.  <u>United States v. Marcavage</u>, 609

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231, and we have appellate jurisdiction under 28 U.S.C. § 1291.

5

F.3d 264, 271 (3d Cir. 2010).  In evaluating Talley's sufficiency of the evidence claim, we "view the evidence in the light most favorable to the . . . verdict and presume that the [trial court] properly evaluated credibility of the witnesses, found the facts, and drew rational inferences."  Id. (quotation marks omitted) (first alteration in original).  And the "verdict . . . must be sustained if there is substantial evidence, taking the view most favorable to the [g]overnment, to support it."  Id. (quotation marks omitted) (alteration in original).

In order to prevail on his claim, Talley must establish that the District Court clearly erred both in crediting King's testimony and in independently determining that the circumstantial evidence alone proved Talley's possession of the charged firearm.  To this end, Talley identifies a litany of purported inconsistencies in King's testimony and also takes issue with police officers' testimony that they saw Talley and King both running out of the room in which the two pistols were found.

Reviewing the trial record "in the light most favorable to the . . . verdict" and presuming that the District Court "properly evaluated" King's credibility, we conclude that Talley cannot establish that the evidence at trial was insufficient to support the verdict.  None of the purported inconsistencies in King's testimony are material enough to show that the District Court clearly erred in crediting that testimony.  For example, Talley challenges the District Court's acceptance of King's testimony that the two were friends, because King also testified that he "knew of" Talley and because Talley contends that he was incarcerated during the period of time in which King testified the two had been friends.  Talley Br. 5.  To the extent that Talley even identifies an inconsistency —

6

of which we are not persuaded — Talley does not explain why the precise details of his relationship with King matter in undermining King's credibility. And to the extent that Talley offers this purported inconsistency solely as impeachment material, it is not significant enough to establish that the District Court clearly erred in crediting King's testimony. Talley's other arguments are similarly unconvincing.

We therefore conclude that the District Court did not clearly err in crediting King's testimony and in drawing the rational inference that one of the guns belonged to Talley, given the officers' unrebutted testimony that two individuals, Talley and King, ran out of an empty room that was found to contain two guns hidden close to each other but in slightly different places.

B.

Talley next argues that the District Court erred under Federal Rule of Evidence 901(a) by not excluding the .40-caliber Sig Sauer handgun admitted at trial. Rule 901(a) provides that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." We review the "District Court's decision regarding the authentication of evidence for abuse of discretion." United States v. Browne, 834 F.3d 403, 408 (3d Cir. 2016).

The thrust of Talley's argument is that the District Court erred in crediting Officer Pedley's testimony that the Sig Sauer handgun admitted at trial was the same one Pedley found in the bedroom closet with the second handgun, because according to Talley,

7

Pedley and other prosecution witnesses failed to provide sufficient evidence of the chain of custody.

But in order "[t]o establish a chain of custody sufficient to make evidence admissible," the Government "need only prove a rational basis from which to conclude that the evidence is what the [Government] claims it to be." United States v. Rawlins, 606 F.3d 73, 82 (3d Cir. 2010) (quotation marks omitted). The "burden is not a heavy one," and Rule 901 does not require "that evidence may only be admitted if a complete and exclusive chain of custody is established." Id. (quotation marks omitted). Finally, we "afford[] great deference" to a trial court's conclusion regarding the sufficiency of a chain of custody, which we may not "overturn[] absent a clear abuse of discretion." Id. at 83 (quotation marks omitted).

Here, Officer Pedley testified on direct examination that the handguns admitted at trial were the same ones he had found in the apartment in which Talley was found and arrested. Notwithstanding Talley's attempts on cross examination and on appeal to call into question whether the Sig Sauer handgun admitted at trial was what the Government claimed it to be, none of Talley's arguments convince us that the District Court erred, much less that the court did so in a "clear" abuse of discretion. Id. Talley's cross examination of Officer Pedley focused on an alleged inconsistency in Pedley's testimony about whether he kept the guns on the floor of the room while waiting for other officers to secure the evidence, or whether Pedley secured the guns in the back of his patrol car while waiting for the evidence team to arrive. This is not enough to overturn the District Court's admission of the gun. Because Rule 901 does not require "that evidence may

8

only be admitted if a complete and exclusive chain of custody is established" and because we "afford[] great deference" to the trial court's conclusions regarding authentication, we conclude that the District Court did not abuse its discretion in declining to exclude the .40-caliber Sig Sauer handgun admitted at trial.

C.

Finally, Talley asserts that the District Court erred in denying his post-trial motion for a judgment of acquittal due to a purported Government violation of Brady v. Maryland, 373 U.S. 83 (1963), by withholding the contents of King's cell phone in discovery.[3] The Government had physical possession of King's phone but represented to the District Court that it had been unable to unlock the phone and access its contents.

A successful Brady claim has three elements: "(1) the prosecution must suppress or withhold evidence, (2) which is favorable, and (3) material to the defense." Claxton, 766 F.3d at 303 (quotation marks omitted). Talley's claim fails for a simple reason: he cannot show that the Government in fact suppressed or withheld the evidence in question. In briefing before the District Court, the Government represented that it had "provided all phone records that it has obtained" and that it had "attempted to utilize a court order to obtain the contents of King's phone, but was unsuccessful." SA 429. Talley presents no basis, other than mere speculation, for us to doubt the accuracy of this written representation. Given the absence of any evidence of suppression or withholding of this

---

[3] Because "Brady . . . claims involve mixed questions of law and fact, . . . we review the questions of law de novo and the district court's factual findings for clear error." United States v. Claxton, 766 F.3d 280, 303 (3d Cir. 2014).

9

material, we need not consider the other elements to conclude that Talley's <u>Brady</u> claim

fails and that the District Court correctly denied his motion on this basis.

III.

For these reasons, we will affirm the District Court's judgment of conviction.